Our last case this morning is DNA Genotek v. Spectrum Solutions, 2023-2017. Mr. Matsui. Thank you, Your Honor, and may it please the Court, Brian Matsui for Genotek. The District Court's claim construction should be reversed, and I'd like to start with two points. First, the District Court started with the wrong premise. It said that the claims were ambiguous simply because the claims don't say where in the device the reagent compartment would be located. And second, the District Court did not require a clear and unmistakable disclaimer to depart from the plain and ordinary meaning of the term reagent compartment. Instead, it simply limited the claims based upon examples, embodiments, or features that were disclosed in the specification. How is it embodiments, examples, how is it that kind of wishy-washy thing when column 6, line 26 and following, and column 14 say the invention features? It's not saying an embodiment of the invention or an example of the invention, or one way to do it is it says the invention features. A first compartment, a second compartment. How is that importing some embodiment or limiting the clear language that's talking about the invention as a whole? So I think that when you look at the language that you're pointing to, Your Honor, on column 6, it is talking about the invention, but it's not using the phrase the present invention, which is signaling that you're talking about the invention as a whole, what this Court has pointed to. And so it's talking about an aspect. The word present is the get out of jail free card here? No, I don't think that that's really it. I think that what you need to find in order for there to be a disclaimer when you have plain and ordinary meaning like this is you need to find something that is clear and unmistakable. And the mere fact that it's talking about an aspect of the invention, an aspect being a part or a feature, isn't amounting to a disclaimer. If you look at this Court's precedent, like Tektronix or Hirram, you have something where there is clear language that indicates that the patentee is talking about the invention as a whole, and ordinarily what they're doing is they're saying that this feature is important. There's nothing in this specification at all that indicates the location of the reagent compartment is important or essential or matters at all. It only has a requirement that it's a compartment that holds the reagent. And that's why I think that the district court went wrong when it took a very broad term that has a plain and ordinary meaning. I don't think anyone disputes now that the plain and ordinary meaning of reagent compartment doesn't require a specific location. And it limited it to what the specification discloses when it just says language is like the device includes a container that has a first region and a second region. And that's not what this Court's precedent does when it's looking for a disclaimer. Now if you don't mind, I'd just like to start with the claims quickly because I think that that helps sort of like emphasize the point. When we have the claims appendix 140, when you look at column 19 at claim one, it's talking about a device. And the inventor is very clear when it wants to specify a structure that goes into the components of the device or a location that's important for this term reagent compartment. For example, in B, it says the reagent compartment having a barrier, said barrier sealing and containing reagents. So it's very specific there as to what the reagent compartment has to do. And it's similarly specific. So if the reagent is not secure, then the thing doesn't work at all. You've got to have the secure reagent someplace, and then you add the saliva or whatever, and then you break the barrier and they have their reaction. So it's got to be secure to begin with. That's a given, isn't it? It is. I mean, there has to be a barrier to hold the reagent, but there's nothing in this claim that indicates where that reagent compartment has to be. And for example, it could be in the cap. It can be anywhere in the device. And had the inventor wanted to specify a location, it could have specified the location by saying that, you know, the containment vessel containing the reagent compartment or something along those lines. It didn't do that here. All we have, then, is a plain, normal meaning of a term like reagent compartment, and then you need to find either a definition or a disclaimer. And there is no definition or disclaimer in this case. So clarify this for me. Did the other side below offer this construction of the containment vessel, or did the court come up with it on its own in light of arguments that your side presented? I mean, were there competing constructions offered to the court, or was there one construction offered by your side below that the court just didn't buy and came up with its own plain and ordinary meaning of the language? So, Your Honor, are we talking about the reagent compartment or the containment vessel construction here? Our challenge is to the construction of reagent. Reagent compartment. Or reagent compartment. From the claim. Yes, and our challenge is to that. And we said it should be the plain and ordinary meaning. And the other side argued that it should be in the containment vessel. And the district court adopted that construction based upon its belief of disclaimer. Did it offer an actual construction of where the reagent compartment should be? No. The plain and ordinary meaning. And that's exactly what it is in this situation. Because the plain and ordinary meaning of a reagent compartment is just a compartment that contains reagent. And there's nothing in the claim itself that would require it to be in any specific location of the device. It just says the device includes, and then it has a reagent compartment. And so, we would be entitled to the plain and ordinary meaning of that term, absent some sort of definition. I mean, once they put it in play, though, that they wanted it in a specific place, why didn't you say reagent compartment is something that is capable of sealing in the reagents and can be in any location in the invention? I mean, I don't think anything along those lines is necessary. I understand, but this is a problem we get all the time. I mean, luckily this didn't, you know, end up, well, never mind. But it seems to me that when the scope of a claim is put into, a claim term is put into play, it behooves both parties to offer a specific interpretation rather than to just throw out plain and ordinary meaning, which gives the district court no guidance and then leaves us with no guidance until you get here and start arguing for a specific meaning. I mean, on that point, I've done hundreds of claim construction hearings. Certainly you have. And I can't tell you how many times there are five terms at issue or 15 terms at issue or 20 terms at issue. And we get there and every one of them says plain and ordinary meaning, plain and ordinary meaning, plain and ordinary meaning. It doesn't give the court any guidance. It doesn't give the court anything other than we don't want what they want. Certainly, Your Honor. How is plain and ordinary meaning from your side really joining the issue and really giving the court something other than, something substantive other than what the other side does? So, Your Honor, I mean, I disagree in this case that we should have to offer a construction that specifies a location because we shouldn't have to lower our claims based upon- I don't think anybody's saying you have to. But I think the problem is when it's put in play, and they have clearly said it has to be in the containment vessel, you put yourself in a bad position when you don't offer construction that says it doesn't have to be. Well, I mean, we did. We argued that it doesn't need- I mean, the whole rejoined issue completely, Your Honor, on the issue as to whether or not it needs to be in the containment vessel. So I think if that is the concern, that has been fully- that should not be a concern of this court because we definitively argued that it does not need to be in the containment vessel. And the other side is the one that is trying to basically take a claim term and add requirements that were found in the specification. And we said, no, it doesn't need to be in the specific location. And so I- So you don't read the specification to require that it be in the containment vessel? No, not at all, Your Honor. And you just- the language in Column 6 and the language in Column 14, it just doesn't have that kind of implication at all? It's not a lexicography, and I don't think it's- it's neither a lexicography nor a disclaimer. It's really describing ways in which the invention can be structured. But if we were to find- The court's supposed to look at the intrinsic record, which not only the language of claims, but embraces the totality of the specification, right? Yes, Your Honor, but this is not a case where there is multiple ordinary meanings, and you're looking to the specification to see what the best reading of a term is. This is a case in which there is a plain ordinary meaning of reagent compartment, and the other side is trying to narrow the claim term based upon the specification. And of a claimer- You're saying that there's only one point in ordinary meaning? Of this claim term, yes, there is. And certainly there is no- the plain ordinary meaning does not require it to be in the containment vessel. And so that's why they went to disclaimer. That's why the other side and the district court went to disclaimer, which is a high burden. You have to find something that's clear and unmistakable. They didn't argue that this is just simply a case in which you can take the term reagent compartment and say, well, now what is going to be the meaning in the context of the specification, because we don't know what that term can mean. They accepted that there is a meaning of this term, and now they're trying to say that there's disclaimer. But when you look at this court's precedent to find a disclaimer, even when you have phrases like the precedent of invention, which here it's not even tethered to the language that you're always pointing to, you still have language that shows that it's important in some way that the location be here, or you have some disparity. I'm not persuaded that this rises to the level of a disclaimer, but I'm still, on the other hand, not persuaded that looking at the specification of construction adopted of the containment vessel goes beyond the intrinsic record and is somehow an error or an abuse on the part of the trial court. You don't have to have a disclaimer to get past plain and ordinary meaning. The only argument they made was disclaimer. They forfeited any other type of argument at claim construction. They made a disclaimer argument only, and that's what the district court decided, and that's what's up here for this court to decide. And so— Claim construction is a legal action, an obligation of the court. It's not—you didn't argue it, so you can't take a position on it. This court has held that you can't change your claim construction arguments on appeal, and that's effectively what this would be. It would be fundamentally shifting the argument. But regardless, even if the court— Without disclaimer, the plain language, just looking at the claim in the context of the specification, is insufficient to say that the reagent compartment has to be in the containment vessel. That's correct, Your Honor. There's nothing— I mean, there's nothing in the plain language of the actual claim that puts it there. Puts a location. And there's nothing in the specification that would say that this is not the kind of case where you look at the specification and say, you know, through passages and passages and passages, it's clear that this is the only way you're talking about this specific term. The term reagent compartment isn't even used in those passages, which is something that you would expect ordinarily in there. Judge Blair, if I could just—you know, I know that I'm into my rebuttal time, but I'd just make one quick point. With respect to the provisional, this case is very different from cases like DDR and MPHJ. First of all, the provisional that was incorporated by reference here is just very different. It's not at all the type that's incorporated verbatim. If you look at Appendix 3182 to 3191, it's very different. And second, in cases like MPHJ and DDR, there was language in the provisional that was limited language or a definition. And so I think a person of ordinary skill in the art would say, oh, well, that's important. Here, we have no limiting language in the specification. And so it's just an example. If there are no questions, I would like to— We will spare you the remainder of your time. Thank you. Morning, Your Honor. May it please the Court. I'll be resigned for the appellee. Resign? Resign. Yes, sir. Your Honor, I'd like to start with the provisional application in terms of just the history of what happened. You had a provisional application in this case that had various embodiments, including an embodiment with a reagent compartment in the cap. You had other embodiments where the reagent compartment was in the container. Now, the word containment vessel never appears in the specification at all, including in the 187. Now, when the provisional was converted to the non-provisional, all embodiments that had to do with the reagent compartment in the cap were removed from the provisional application to the non-provisional. Now, the embodiments with the reagent compartment in the tube were all faithfully reproduced into the non-provisional. Now, what also happened was that— Is that the basis for your disclaimer argument? No. The basis of the disclaimer argument is actually the specification of the 187. It's kind of going through the history of what happened in terms of what the patentee can or cannot do. Now, when Genotek went from the provisional to the non-provisional, not only did they take out the embodiments that actually had to do with the reagent compartment being in the cap, they also took out disclosure in the provisional application that actually said, in an embodiment, the reagent compartment is in the tube. That was stricken as well. And then what we've had was when we went to the non-provisional application, the disclosure of the 187 patent, you now have statements about, in the sixth aspect, the invention features. Now, the aspect is important. Now, we heard Genotek argue that when it comes to aspects, those are not necessarily the invention includes. Now, this invention has three different sort of subsets. It was the compositions, methods, and the container. Now, when it came to the various different aspects, aspects 1, 2, 3, 4, 5 had to do with compositions and methods. Aspect 6 was the only one that had to do with the container. And so when they were saying, in the sixth aspect, the invention features, they were talking about the device invention as a whole. Now, the case law, and I heard Counselor mention Tektronik. In the Tektronik case, you had a very similar issue as well. Not just was the infrared detector located in the wall console. In that case, this court also found the fact that there was an aspect of the invention that had to do with a microcontroller didn't make any difference because that's a different invention. The fact that you have various different inventions included in this particular application doesn't mean that the device invention, which is on its own as a whole, isn't described as the invention. Now, one other thing that we also have in this case is citations to cases like HILROM where they're talking about the specifications mentioning of criticality, essentiality, or importance. And there, HILROM is actually really, really interesting in that that requirement, consistent with this court's jurisprudence, actually says that you do that when you don't have a description of the present invention as a whole. If you're trying to go to an embodiment, then you need essentiality, criticality, or importance. And cited on page 1373 of HILROM, it says, however, absent some language in the spec of prosecution suggesting that wired connection is important, essential, necessary, or the present invention, there is no basis to narrow. Here, we have the present invention. And actually, when you actually look at the Regents of University of Minnesota, what you have in that case also is the fact that when you describe the invention as a whole, that is disclaimer. Now, here, when you go from the non-provisional, where you have embodiments with the cap, you excise them. You have disclosure that explicitly says in an embodiment, it's in the actual reagent. The reagent compartment is in the container. You excise them. You go into the non-provisional. You are doing exactly what DDR Holdings said. You are evolving your application. And what you delete is as important as showing what you intended to mean by that than anything else. Now, one other thing that we heard is the ambiguity of the claims. Now, these claims were ambiguous on purpose. If you actually look at the claim language, and we're not arguing ambiguity because we don't need that here. What we actually just need is a delineation of the present invention. Now, what you have there is you actually see. To be clear, the specification doesn't use the word present. It doesn't use the word present, but it says the invention features and every description. You said that several times, so you might just omit the word present from your statement. Yes, Your Honor. I apologize. So it does not say the present invention. It says the device invention features, and then it says the device includes these aspects. So with the totality of what we're looking at between the provisional to the non-provisional, the statements in the non-provisional about the invention, and then what you also see is although not necessarily useful to interpret claims, their own understanding was advanced in later iterations of various different applications where they actually tried to get patents on containers with a compartment in the cap. Now, I understand this course jurisprudence advisor and other cases says that we can't look to those to interpret claims, but we can look to them to see whether they understood their disclaimer to be effective or not, and that's what we have in this case. Now, another thing that I think is important to also get to is something that, Judge Ginsburg, you were kind of mentioning is this issue of containment vessel. The court's finding in summary judgment was on containment vessel. It wasn't on reagent compartment. Now, what this court would have to do in order to get to reagent compartment would have to say, look, we understand that the issue before us is not reagent compartment, it's containment vessel, but because reagent compartment was construed in this manner, Genetec was forced to take a position that was found to be specious and rejected by the district court, and now we're going to redo the claim construction on this issue of reagent compartment so that Genetec can go back and restart their evidence and put in new evidence for a limitation not before this court, and we believe that that's the mootness argument that comes there. It's a threshold issue that the court would have to reach because if this court were to reverse reagent compartment, the court's finding that the accused product did not meet the containment vessel limitation would remain in place. Well, true enough, the court's finding was on containment vessel, but the summary judgment was only possible because of the construction of reagent compartment, right? No, Your Honor, I believe that summary judgment was only appropriate because the evidence that Genetec put forward on containment vessel was found to be specious and summarily rejected, and actually the lower court was careful to state because Genetec actually moved for reconsideration of the reagent compartment limitation in this opposition to summary judgment. In denying that motion for reconsideration, the court specifically said the summary judgment is not on reagent compartment. It's on containment vessel based on an argument made by Genetec based on evidence put forth by its expert, and if we were to go back to the lower court, what we would have to do is go back in time and now put in other evidence on containment vessel, which is not before this court, only on reagent compartment. I'm not sure about that, but I hear your argument. I'm saying procedurally in terms of what we would have to do. It wouldn't set aside the judgment on containment vessel. It would give them effectively a mulligan to go back and re-argue that particular point based on, okay, so now that we have a different construction on reagent compartment, let's go back to a prior iteration of your argument on containment vessel, and now let's take back the expert declaration you put in that says containment vessel is the tube and the cap put together, which is the argument they made, basically saying if you get a clone construction that you don't like, you can argue something else and then have some tenuous connection to the prior term to say, hey, I'd like to get a redo because it's a de novo issue. That's the point that I was making there, Your Honor. Well, I'm confident that if we send it back to the trial court, they'll argue everything. Both sides will argue everything they can. It will be up to trial court to constrain the applications of the remand if that should happen, but I don't know that that's a reason that should move this court one way or the other at this juncture. And I understand what you're saying, Your Honor. I don't have any fear about the parties being able to argue both sides well at the district court and the district court being able to proceed those arguments. The concern that I have more is if this summary judgment wasn't granted and the clone construction were what it were because there was an offer to stipulate the non-infringement, come and try to figure out the clone construction issue on the reagent compartment first before weighing on the merits, but if summary judgment were denied based on the fact that there's factual issues that's moved forward, this entire issue would have gone to a jury, and the argument that would have been made to a jury would have been on a containment vessel, and we would have been here, and that holding that basically served— Well, you're all right. We're talking about two different things. We're talking about clone construction, and then subject to the court's clone construction, we're talking about the court's granting of summary judgment and of non-infringement, and whether that's driven by the other—they're two different things, and really what this court has got to focus on is did the trial court err in adopting the construction that it adopted, regardless of whether that goes to a jury later or ends up granting summary judgment, or whatever happens after the fact, our focus is on the clone construction process and did the trial court err in adopting the construction that the other side is complaining of. No, and I agree, Your Honor, but the part that I'm arguing is that clone construction here and the non-infringement position here was not on the term that was the subject of the non-infringement opinion by the court, and what we would have to do to get to the—the only issue raised by Genotech here, which is reagent compartment, would have to be—well, reagent compartment is somehow linked to the element that was found missing from the product, and because it's linked, we're going to look at that in acceleration bay. There were two different issues before the court, and the court said, well, because this wouldn't set aside the judgment, the issues move, so what I'm saying here is if we were to look at containment vessel, I would understand that, because that's the basis of the judgment. That's where the judgment was based on the fact that containment vessel cannot include the cap, which is what Genotech was arguing, but now Genotech is arguing, well, if the reagent compartment limitation were construed differently, I would have taken a different position on containment vessel, and I wouldn't have lost. All right. Anything further, counsel? No, Your Honor. Mr. Matsui, we'll give you two minutes for a bottle. Thank you, Your Honor. Just briefly on the non-infringement issue, we should not have to appeal non-infringement under the district court's construction when we're challenging that construction. That's what they want us to do at red brief, page 27. They conceded at appendix 5789 that the tube is the containment vessel, Your Honor. That's what they said, and our complaint made clear that the Spectrum product includes a tube with one continuous wall, which is the containment vessel for collecting saliva. We had to change our infringement contentions after the district court's construction. We would change them again if this court were to remand with the new construction, because reagent, based upon a reagent compartment. On the issue of what the, of the word aspect, aspect isn't a term of art that this court basically grants way to, to say it's like the present invention. There's no language here that connects aspect with the present invention. In fact, all the references to the present invention are where the patentee is talking about methods and compositions, like the compositions for the reagent, not the device itself. And so I think that that really takes us even further away from any sort of disclaimer case law. On the provisional application, again, I would just note that the provisional here in this case is very, very different from the actual 187 patent specification. It's not one of those things where you can go through and say, okay, it's clear that they took out this sentence because it was important. It was effective, the specification's like three to four times longer. It was basically completely rewritten. And so I don't think this is a case like in NPHJ where you can say that what was taken out was significant. If anything, I think that what it shows is that by incorporating it by reference, it shows that there's other types of embodiment in which the reagent compartment can be in the cap, not just in the containment vessel itself. If there are no further questions, we'd ask for your comments. We appreciate both arguments. Case is submitted, and that concludes today's arguments.